**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN BERTRAM,** | : | **CIVIL ACTION NO. 1:20-CV-1284** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN GREGORY BRIGGS,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Kevin Bertram ("Bertram") commenced this action pursuant to 42 U.S.C. § 1983 alleging that he received inadequate medical care for an injury sustained at the Dauphin County Prison, in Harrisburg, Pennsylvania. (Doc. 1). The sole named defendant is Warden Gregory Briggs. Before the court is defendant's Rule 12(b) motion (Doc. 17) to dismiss. For the reasons set forth below, the court will grant the motion.

## I. Factual Background & Procedural History

On or about September 18, 2019, Bertram alleges that he slipped and fell in the shower at the Dauphin County Prison. (Doc. 1 at 6). He contends that the shower stalls are not cleaned regularly, there was a soapy residue on the shower floor that caused him to slip and fall, and there are no shower mats or safety handrails. (Id.) As a result of the fall, Bertram allegedly injured his ankle, hip, back, and shoulder. (Id. at 6-7). He alleges that defendant Briggs "knowingly delayed proper medical and psychological treatment, then immediately moved the Plaintiff out of the dayroom to a top-tier cell after injury was sustained." (Id. at 7).

Specifically, Bertram asserts that defendant Briggs improperly delayed ordering x-rays and misinformed him that he would be permitted to undergo magnetic resonance imaging ("MRI"). (Id.)

Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17). The motion is fully briefed and ripe for resolution.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See

Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege

"the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**A. Lack of Personal Involvement**

Defendant Briggs seeks dismissal of the complaint based on a lack of personal involvement. (Doc. 18 at 9-11). Individual liability will be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat superior." Id. In other words, defendants in § 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Bertram alleges that the shower stalls at the Dauphin County Prison are not cleaned regularly and there are no shower mats or safety handrails, which directly contributed to his slip-and-fall. He generally asserts that Dauphin County Prison staff are "careless and openly negligent resulting in many accidents." (Doc. 1 at 7). Bertram's complaint fails to allege any personal involvement of defendant Briggs and fails to set forth any factual averments that identifies how he was involved in the alleged wrongdoing. Bertram's claims against defendant Briggs consist of little more than assertions of *respondeat superior* liability. As a matter of law, these assertions do not suffice to state a claim against defendant Briggs.

With respect to defendant Briggs' role as a supervisor, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Completely absent from the complaint are allegations that defendant Briggs established and maintained a policy, practice, or custom which directly caused the constitutional harm, or that he participated in violating Bertram's rights, directed others to violate them, or acquiesced in any unconstitutional conduct by his subordinates. For these reasons, defendant's motion to dismiss the complaint will be granted based on a lack of personal involvement.

### B. Eighth Amendment Claim

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Assuming *arguendo* that Bertram's injuries rise to the level of a serious medical condition for purposes of the Eighth Amendment analysis, the court must determine whether Bertram has pled a deliberate indifference to that need. Bertram alleges that defendant Briggs exhibited deliberate indifference because he delayed ordering x-rays, misinformed Bertram that he would undergo an MRI, and placed him on a top-tier housing block. (Doc. 1 at 4, 7). However, Bertram also

confirms that he underwent x-rays at the Dauphin County Prison and at the Hershey Medical Center and underwent physical therapy at the Hershey Medical Center. (Id. at 8). The allegations reflect that Bertram received medical treatment for his injuries. Any brief delay in undergoing medical treatment does not rise to the level of deliberate indifference and thus does not violate the Eighth Amendment. See Rhines v. Bledsoe, 388 F. App'x 225, 228 (3d Cir. 2010) (holding that the failure to immediately order an MRI upon prisoner's request does not demonstrate deliberate indifference). Additionally, Bertram alleges no facts to suggest that the decision to place him on a top-tier housing block was based on improper motives. Nor does he allege that there was a medical basis prohibiting his assignment to a top tier or that he was classified as requiring a bottom tier assignment. The complaint is devoid of any facts showing that defendant Briggs acted with deliberate indifference towards a serious medical need.

Moreover, defendant Briggs is not a medical professional, and therefore cannot be considered deliberately indifferent simply because he "failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (affirming that as a matter of law, non-physician prison officials could not be considered deliberately indifferent for this reason); see also Smith v. O'Boyle, 251 F. App'x 87, 89 (3d Cir. 2007) (affirming dismissal of § 1983 claim against prison officials because "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians"). Absent a "belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner," defendant Briggs, a non-medical

prison official, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference. Innis v. Wilson, 334 F. App'x 454, 456-57 (3d Cir. 2009) (affirming dismissal of prisoner's deliberate indifference claim against non-medical prison officials). Bertram failed to allege this belief or actual knowledge. For all the foregoing reasons, the court will grant defendant Briggs' motion to dismiss the Eighth Amendment Claim.

### C. Qualified Immunity

Even if Bertram had stated a colorable constitutional claim, defendant Briggs is nevertheless entitled to qualified immunity from this claim for damages. In order to establish a civil rights claim, Bertram must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. It "provides ample protection to all but the

plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles, 571 F.3d at 325-26.

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated, and (2) whether that right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first). As stated, the court finds that Bertram failed to establish the violation of a constitutional right. Defendant Briggs simply could not have recognized that his actions would violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson, 526 U.S. at 609. Therefore, defendant Briggs is protected from liability by qualified immunity.

**D. Municipal Liability Claim**

Defendant next seeks to dismiss the purported municipal liability claim. (Doc. 18 at 18-20). A municipality may be held liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of constitutional rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson,

563 U.S. 51, 60 (2011) (quoting Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 692 (2018)). Thus, a plaintiff seeking to impose constitutional liability on a municipality must meet the difficult burden of proving that an "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 691, 694. This requires the plaintiff to identify an official or unofficial municipal policy—including "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," Connick, 563 U.S. at 61 (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, Berg v. County of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

The complaint fails to identify any policymaker effectuating an official policy which was the moving force behind the alleged constitutional violation. (See Doc. 1). In fact, the complaint fails to reference *any* policy or procedure that was allegedly violated. Consequently, Bertram's claim in the form of a violation of a municipal policy under Monell will be dismissed.

## IV. Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). The defects in Bertram's pleading are substantial, but they are factual in nature and thus conceivably could be cured by an amended pleading. We will thus dismiss Bertram's complaint with leave to amend.

## V. Conclusion

We will grant defendant's motion (Doc. 17) to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: August 20, 2021